# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**KIMBERLY ANN DICK**                                                      **PLAINTIFF**

**V.**                    **NO. 4:20-cv-00936-BRW-ERE**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.  Introduction:**

Plaintiff, Kimberly Ann Dick, filed a Title II application for disability and disability insurance benefits on December 18, 2017. (Tr. at 11). She also filed a Title XVI application for supplemental security income benefits on January 9, 2018. *Id*.

In both applications, she alleged disability beginning on June 15, 2015.[1] *Id*. The applications were denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Dick's applications on October 15, 2019. (Tr. at 21-22). The Appeals Council denied her request for review on June 17, 2020. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Dick has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. **The Commissioner's Decision:**

The ALJ noted that Ms. Dick, who was born on February 24, 1973 (Tr. at 20), met the insured status requirements (had sufficient earnings quarters) through June 30, 2016. (Tr. at 14). At step one of the required five-step analysis, the ALJ found that she had not engaged in substantial gainful activity since the alleged onset date of June 15, 2015.[2] *Id*. At step two, the ALJ determined that Ms. Dick has the

---

[1] Although the relevant time-period for determination of eligibility for benefits is subject to a great many factors, there are some general rules: For Title II applications, the start of the relevant time-period is the alleged onset date. (Tr. at 11-12); Soc. Sec. Rulings 82-52; 18-1p. For Title XVI applications, the beginning of the relevant time-period is the application date. *Id*. For Title II applications, the relevant time-period generally ends on the date the claimant is last-insured (has sufficient quarters of earnings coverage); for Title XVI benefits, the relevant time-period may run through the date of the ALJ's decision. (Tr. at 11-12). These periods may overlap or not, depending on the facts of the case. In this case, the relevant time-period runs from June 15, 2015 (the alleged onset date) through October 15, 2019 (the date of the ALJ's decision). (Tr. at 21).

[2] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed

following severe impairments: degenerative disc disease of the lumbar and cervical spine, epilepsy, depression, and anxiety. *Id.*

After finding that Ms. Dick's impairments did not meet or equal a Listing (Tr. at 14-15), the ALJ determined that she had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with exceptions: (1) she cannot climb ladders, ropes, or scaffolds; (2) she can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; (3) she can have no exposure to unprotected heights or hazards in the workplace and no driving or operation of dangerous machinery (seizure precautions); (4) she is limited to simple, routine, repetitive tasks with supervision that is simple, direct, and concrete, including specific vocational profile (SVP) 1 or 2 jobs that can be learned within 30 days.[3] *Id*.

The ALJ next found that Ms. Dick was unable to perform any of her past relevant work. (Tr. at 20). At step five, ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Dick's age, education, work experience,

---

impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[3] The SVP level listed for each occupation in *The Dictionary of Occupational Titles* (DOT) connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work performance. DOT App. C (4th ed. 1991); https://secure.ssa.gov/poms.nsf/lnx/0425001001.

and RFC, jobs existed in significant numbers in the national economy that she could perform, such as charge account clerk and telephone quotation clerk. (Tr. at 20-22). Therefore, the ALJ found that Ms. Dick was not disabled. *Id*.

III. **Discussion:**

    A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary

4

sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Ms. Dick's Arguments on Appeal

Ms. Dick contends that the evidence supporting the ALJ's decision is less than substantial. She argues that: (1) she met Listing 11.02 (Epilepsy): and (2) the RFC for sedentary work exceeds her abilities. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Dick focuses her argument on seizure disorder and back pain. While both impairments were severe and caused some limitation in her ability to function, the ALJ correctly determined that Ms. Dick was not disabled.

Ms. Dick alleged that she had seizures for many years, but in 2017, she

reported that seizure medications she had taken in the past were ineffective, so she stopped the medications ten years prior.[4] (Tr. at 386, 525, 620). At the hearing, she said that she had resumed taking seizure medications and that they were moderately effective.[5] (Tr. at 72-79).

Still, Ms. Dick reported that she had significant grand mal seizures and smaller seizures on a regular basis. However, a May 2017 EEG was normal, with no focal or epileptiform abnormalities. (Tr. at 17, 437, 529). A cranial nerve exam the month before was normal, and so was a mental status exam.[6] (Tr. at 525-526). In August 2017, Ms. Dick's neurological examination was normal and the neurologist noted that stress was causing her seizures. (Tr. at 17, 483-485). The neurologist suspected functional (psychological) etiology, based on Ms. Dick's normal objective testing results. *Id.*, see 20 C.F.R. pt. 404, Subpt. P. App. 1, § 11.00 (H)(1)(psychogenic nonepileptic seizures and pseudoseizures are not seizures for purposes of Listing 11.02).

While an October 2017 EEG was "suggestive of cortical irritability and

---

[4] *Smith v. Shalala*, 987 F.2d 1371, 1374-75 (8th Cir. 1993)(When a claimant has not treated his impairment, the ALJ is justified in ruling out the impairment as disabling).

[5] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

[6] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

epileptic potential," a four-day epilepsy study showed no evidence of habitual events. (Tr. at 17, 443-468). At that time, cranial, sensory, and reflex exams were normal. (Tr. at 444).

Ms. Dick may have had seizures to some degree, but the objective evidence fails to support the intensity or frequency of her alleged seizures.[7] And the ALJ *did* credit Ms. Dick's reports of seizures because he included seizure precautions in her RFC. (Tr. at 16). He also discussed the Disability Determination Services medical experts' opinions, which recommended seizure precautions. (Tr. at 19). Moreover, the ALJ observed at the hearing that a drug test for PCP was positive, which possibly exacerbated seizure activity. (Tr. at 76). Finally, Ms. Dick could perform some daily activities, albeit in a limited fashion, which undermines her claim that she was fully disabled.[8]

However, Ms. Dick asserts that she met Listing 11.02 (Epilepsy). That Listing requires:

---

[7] Functional limitations must have a basis in the medical evidence and are not established based solely on a claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

[8] Ms. Dick said she could shop for groceries, do some laundry, read, watch TV, and visit out of the house with others. (Tr. at 302-310). Inconsistencies between subjective complaints of pain and daily living patterns diminish credibility. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or

B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or

C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

1. Physical functioning (see 11.00G3a); or

2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

3. Interacting with others (see 11.00G3b(ii)); or

4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

5. Adapting or managing oneself (see 11.00G3b(iv)); or

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

1. Physical functioning (see 11.00G3a); or

2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

3. Interacting with others (see 11.00G3b(ii)); or

4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. pt. 404, Subpt. P, App. 1, § 11.02.

At Step Three, the burden rests squarely on the claimant to show she meets a Listing. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010); see *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (stating the claimant must show that her impairment matches *all of the specified medical criteria* of a Listing)(emphasis added). While Ms. Dick alleges that she met the required elements of Listing 11.02, grossly normal clinical findings, her discontinuation of medication, and her relative improvement when she did take medication, shows she does not.[9] The Court finds that the ALJ did not err at step three.

Finally, Ms. Dick contends that because of severe back pain, she could not perform the sedentary exertional work assigned in the RFC.[10] True, Ms. Dick did

---

[9] The ALJ did not specifically mention Listing 11.02 at step three of his discussion, but this was harmless error, because the record as a whole supported his step three decision. The failure to address a specific listing is not reversible error if the record supports the overall conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).

[10] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by

9

have significant back pain during some of the relevant time-period. Imaging studies of the lumbar and cervical spine confirmed moderate problems. (Tr. at 16-17, 34-44, 517, 723). However, Ms. Dick did not pursue fusion surgery to fix her back until a month after the hearing date. (Tr. at 64-66). She stated that the surgery was pushed back due to problems with health insurance because she could not afford to pay for the surgery until August 2019.[11] *Id*. Also, records that Ms. Dick submitted to the Appeals Council after the hearing showed that she experienced significant improvement and reduction in back pain after the surgery. (Tr. at 46-48). Sedentary work is the lowest exertional level for these cases, and the ALJ included additional postural limitations based on Ms. Dick's subjective reports of pain. (Tr. at 16). The RFC properly incorporated all of Ms. Dick's credible limitations.

## VI. **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Ms. Dick was not disabled. The ALJ did not err at step three and the RFC incorporated all of Ms. Dick's credible limitations.

---

competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

[11] *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (absent evidence claimant was denied low-cost or free medical care, claimant's argument he could not afford medical care was appropriately discounted). There is no evidence that Ms. Dick was denied low-cost treatment.

The case should be dismissed, with prejudice.

IT IS SO ORDERED this 28th day of June, 2021.

_____
UNITED STATES MAGISTRATE JUDGE